BLACKWELL LYNCH & BERNARD, PLLC
3101 N. Central Ave., Suite 820
Phoenix, AZ 85012
Tel: (480) 227-4984
Fax: (602) 865-1527
Jocquese L. Blackwell SBN 023588
Jocquese@azjustice.com
Gillmore Bernard SBN 032306
Gill@azjustice.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Charles Montez, a Married Man<br><br>Plaintiff,<br>vs.<br><br>Paul Penzone, in his official capacity a Sheriff of Maricopa County; Maricopa County Sherriff's Office Deputy Dan Russell # S1886 and Jane Doe Russell, husband and wife; Maricopa County Sherriff's Office Sergeant Fredrick. Sevilla # S1382 and Jane Doe Sevilla, husband and wife,<br><br>Defendants. | **No. 2:19-cv-00349-SMB--JZB**<br><br>**AMENDED C O M P L A I N T**<br><br>**Hon. Susan Brnovich** |

Plaintiff Daniel Charles Montez by and through counsel undersigned, for his Complaint, alleges as follows:

1. Plaintiff Daniel Charles Montez is a single individual and is a resident of Phoenix, Maricopa County, Arizona.

2. Defendant Paul Penzone ("Sheriff Penzone") holds the position of Maricopa County Sheriff and employer of his deputies named herein.

3. Sheriff Penzone is named in his official capacity only, as the Sheriff of Maricopa County, Arizona. He is vicariously liable under the state law claims asserted herein for the conduct of his deputies while acting in the course and scope of their employment as such.

4. Upon information and belief, Defendants Dan. Russel and Jane Doe Russell are a married couple residing in Maricopa County, Arizona. Deputy Russell's acts, errors and omissions alleged herein were done for the benefit and furtherance of the Russell marital community. At all times mentioned, Deputy Russel was an employee of the Maricopa County Sheriff Department. Deputy Russell is being sued individually and in his official capacity as a deputy of the Maricopa County Sheriff Office (hereinafter "MCSO").

5. Upon information and belief, Defendants Fredrick. Sevilla and Jane Doe Sevilla are a married couple residing in Maricopa County, Arizona. Deputy Sevilla's acts, errors and omissions alleged herein were done for the benefit and furtherance of the Sevilla marital community. At all times mentioned, Sergeant Sevilla was an employee of the Maricopa County Sheriff Department. Sergeant Sevilla is being sued individually and in his official capacity as a deputy of the Maricopa County Sheriff Office (hereinafter "MCSO").

**JURISDICTION & VENUE**

6. Jurisdiction is appropriate in this Court pursuant to the Arizona Constitution, A.R.S. §§12-122, 12-123 and common law.

7. Venue is proper in this court pursuant to A.R.S. §12-401 as the defendants are residents of Maricopa County, Arizona and the events underlying this lawsuit occurred in Maricopa County.

8.  Plaintiffs have satisfied the provisions of A.R.S. §12-821.01 by serving upon Defendants a notice of claim. Pursuant to A.R.S. §12-821.01(E), the claim has been denied by all Defendants.

## GENERAL FACTS

9.  All of the allegations set out above are reasserted and incorporated by reference.

10. On January 1st, 2018, at approximately 10:30pm, MCSO received a call for service in reference to a domestic violence situation occurring in Tolleson, Arizona near the area of 99th and Southern avenues. The caller relayed that his uncle, Montez, had ran over the caller's father while driving a silver Toyota Tacoma. MCSO deputies responded to the call. At the scene, the deputies learned that Montez had left, returning to his own residence, a mile away. MCSO deputies Young #S1915 and Russel #S1886, along with Sergeant Sevilla #S1382 and K9 Mirko subsequently responded to Montez's residence. There, the deputies located Montez's vehicle parked to the rear of the property.

11. The Following facts are taken from the on-body cameras of Sergeant Sevilla and Deputy Russell.

12. Upon seeing Montez, Deputy Sergeant Sevilla #S1382 (hereinafter "Sevilla") gave Montez the following orders:

"Hey, step out,"

"Step out here!"

"Come out, come out with your hands up!"

"Drop that,"

"Drop that and come out to me!"

Come out here!"

BLACKWELL LYNCH & BERNARD, PLLC
3101 N. Central Ave., Suite 820
PHOENIX, AZ 85012

13. During this exchange, Sevilla failed to announce who he was or that he was an officer of the law. Additionally, all deputies where shining their high beam flash lights in Montez's eyes, obstructing his vision and compounding his confusion.

14. After giving the aforementioned commands, Sevilla finally announces, "sheriff office."

15. Upon hearing that the men at his home were from the Sherriff's Office, Montez immediately dropped the unknown object and raised his hands. He then stated "ok, ok" in compliance.

16. Montez then walked away from the object to the middle of his driveway, got on his knees, put his hands on his head and surrendered. Montez voluntarily performed this act of submission without being told to do so by any officer. At no point during the interaction did Montez attempt to flee, attempt to grab the object or actively resist the deputies.

17. During this time, Montez's dogs were loose and barking within his yard. Aimee Montez asked Seville if she could gather her dogs, and Seville allowed her to do so. However, Aimee was unsuccessful in ushering the dogs back into the residence. During Aimee's attempt at corralling the dogs, Montez remained in his surrendered position on his knees with his hands on his head. However, Montez, in an attempt to assist Aimee in gathering the dogs, briefly removed his hand from his head. Montez was immediately told to place his hands back on his head by Deputy Russel #S1886 (hereinafter "Russel") who exclaimed, "put your hands on your fucking head!"

18. Frustrated with the unprofessionalism and lack of organization displayed by the MCSO deputies, Montez got up and told the deputies to either shoot him or let Aimee get the dogs.

19. Seville then gave Montez two conflicting orders. Seville first ordered Montez to "come through the fence to the street", then immediately shouts for Montez to

"get back." It was impossible for Montez to obey both commands at the same time, so he stayed where he was with his hands in the air.

20. It is also of great importance to note that the other two deputies were also shouting additional conflicting commands at Montez. These commands included:

"Get your fucking dog!"

"Get Back!"

"Go Lay down!"

"Get your hands up!"

"Get on the ground now!"

21. Throughout this exchange Montez kept his arms out away from his body, with his hands open, and went down to his knees.

22. As Montez is retreating to his knees a deputy kicked one of Montez's dogs, prompting Montez to stand and say, "hey don't kick my dog."

23. Montez was then kicked in the back by Deputy Young causing Montez to fall to his knees.

24. Immediately upon Montez falling to the ground, Russell released his K9 Mirko, who attacked Montez as commanded.

25. Russell can be heard giving Mirko the bite command, inducing Mirko into a frenzied attack upon Montez.

26. Instinctively, Montez grabbed and held Mirko away from his face to prevent the K9 from latching on to his face and neck. Russell deceptively yells "stop hitting the dog" while striking Montez with his hard knuckle gloves, however Montez is never seen striking the dog.

27. While Mirko attacked Montez, Seville repeatedly struck Montez in the face with the butt of his rifle causing a large gash to form on Montez eye.

28. The repeated assaults on Montez's face and head caused him to release Mirko and cover his face to shield himself the barrage of attacks coming from the deputies.

29. This maneuver however allowed Mirko to immediately latched onto Montez's left bicep.

30. For the next two minutes and forty seconds, Mirko tore, bit and ripped into Montez's arm. During this time Defendant Russell praises Mirko stating, "good boy" and "that a man."

31. Throughout Mirko's attack, the K9 violently shook and tore into Montez's arm causing Montez to squirm in pain. Despite this, Montez was still able to comply with the deputies' initial command to get on his stomach. At 4:11 in the body camera worn by Sevilla, Defendant Russell can be seen straddling Montez's legs holding Mirko in position, still praising and patting the K9, encouraging him to bite, jerk and rip into Montez's arm.

32. While Russell was positioned at Montez's feet with Mirko still latched onto Montez left bicep, Sevilla ordered Montez to put his hands down. Montez complied but exclaimed in pain, "ouch, please stop, I'm not a bad guy". At this point in Sevilla's video a pool of blood began forming on the ground.

33. Defendant Sevilla then placed handcuffs onto Montez' right hand and attempted to cuff his left hand. While doing so Montez's body naturally rolled to the left pulling his left arm away from Mirko. In response, Mirko again shook and increased the bite causing Montez to roll back to the right to lessen the tension between his left arm and Mirko. Mirko was continuously praised throughout.

34. Quickly, Montez returned to his stomach and placed his handcuffed right hand on top of his head. His left arm was lifelessly spread out to the side with Mirko still secured to it.

35. While still laying in a pool of his own blood. Montez is then ordered to place his hands behind his back. In response to the commands Montez plead with the

deputies stating, "I can't".  As Montez attempted to comply, however, Mirko continued to shake him while increasing its bite.

36. Sevilla then told Montez, "the dog is not coming off until you put your hands behind your back… not on your head behind your back!".  Russel then asked if he should tase Montez.  Sevilla indicated that the taser is not necessary and that he was "good".  Despite the rebuff from Sevilla, Russel again continued to entice and praise Mirko which made the K9 violently shake Montez's arm again.  At this point in the attack all three Deputies have surrounded Montez and Sevilla had positioned the mussel of his tactical riffle on the back of Montez.

37. Approximately two minutes into the attack both Sevilla and Russell ordered Montez to place his hands behind his back notwithstanding the fact that Sevilla had already secured Montez' right hand and that Montez continued to indicate that he could not move his left arm.

38. At 5:35 in Sevilla's video Montez again attempted to comply with the orders given to him by the deputies.  However as soon as he attempted to move his left arm Mirko again began to bite, shake and rip into his arm.

39. Covered in his own blood and fearing he is about to as have his arm ripped out, Montez began to cry out in pain. He begged the deputies stating, "Please stop."

40. Sevilla told Montez, "it's only going to get worse put your hands back!"

41. Montez again pled though his tears, "I'm trying! I'm trying!"

42. Finally, at 6:05 within the same video, two in a half minutes into the attack, Sevilla told Russell to pull the dog back.  During this, Montez again cried out that he could not move his hand back.

43. The on-body camera worn by Sevilla indicates that Montez's bloodied arm is lifeless and only moving as Mirko violently shook it around.

44. Despite being ordered to remove the K9, Russel praised Mirko again.

45. Twenty seconds after being told to remove Mirko from Montez' arm, Officer Russel gave the command for Mirko to release. However, the K9 did not release. Russell gave the command two more times and Mirko finally released Montez's lifeless arm.

46. Montez was picked up and lead to a nearby MCSO patrol vehicle. There, Sevilla acknowledges that Montez had lost a lot of blood and he needed a tourniquet. One was applied.

47. Montez had lost so much blood that he was in and out of consciousness and crying.

48. Montez was transported to the hospital. There, it was found that Montez had multiple lacerations across the medial aspect of the upper mid arm measuring about 8cm in total, traumatic lacerations, and multiple puncture wounds of the proximal forearm. The 8-cm traumatic was explored and it was discovered that Montez suffered from a complete avulsion of his brachial artery, as well a laceration of his bicep muscle and the brachialis muscle. It was also discovered that both of Montez's median and musculocutaneous nerves were heavily contused.

**FIRST CLAIM FOR RELIEF**
Negligence Failure to Trian - Defendant Penzone

49. All of the allegations set out above are reasserted and incorporated by reference.

50. Defendant Penzone in his official capacity, possessed the power and authority to hire, train and fire employees of the MCSO and based upon information and belief negligently hired and/or trained K9 Officer Mirko, however entrusted the K9 ensuring the safety of the community.

51. By virtue of the foregoing, Defendant Penzone owed Montez a duty of due care, and a duty to ensure all K9 officers were trained to obey all commands given to them by their handlers.

52. Defendant Penzone breached his duty by failing to adequately train K9 Deputy Mirko to release his bite upon the first command.

53. As a direct and proximate cause of the aforementioned acts of Defendant Penzone, Montez was severely injured when K9 Officer Mirko failed to release his bite after commanded by his handler.

## SECOND CLAIM FOR RELIEF
Battery – Defendant Russell

54. All of the allegations set out above are reasserted and incorporated by reference.

55. Defendant Russell, while working as a Sheriff's deputy for MCSO and acting within the course and scope of his duties, intentionally released his K9 officer Mirko upon Montez and instructed Mirko to bite Montez. Defendant Russell had no legal justification for deploying such force upon Montez. After the deputies announced who they were, Montez immediately demonstrated that he did not pose a threat by placing his hands in the air. Montez did not try to run from or evade the deputies but calmly walked to where they told him to go. Throughout the interaction, Montez attempted to comply with the myriad and conflicting instructions given to him by multiple deputies without deploying threatening behavior or becoming actively aggressive. Despite this, and after Montez was kicked in the back to the ground, Defendant Russell instructed Mirko to bite Montez multiple times. Defendant Russell's use of force while carrying out his duties was unreasonable.

56. Defendant Russell then failed to command Mirko to release when it was apparent that Montez no longer posed a threat and was subdued.

57. As a direct and proximate cause of defendants' battery, Montez has suffered serious bodily injury, pain, suffering, anguish, emotional distress including hospital, and other medical expenses, all in an amount to be proved in the trial in this matter.

58. Throughout K9 Officer Mirko's attack, Defendant Russell praised Mirko, enticing the animal to continue to maul Plaintiff. Defendant Russell's praise continued even though Plaintiff was on the ground secured by two other deputies and crying in pain. Defendant Russel's conduct is also in violation of MCSO's policy and procedures as Plaintiff did not pose a threat to any officer or actively attempting to evade the MCSO deputies. The conduct of Defendant Russell was malicious, wanton, oppressive and accomplished with a conscious disregard of Plaintiff's rights entitling Plaintiff to an award of exemplary punitive damages.

### THIRD CLAIM FOR RELIEF
Battery – Defendant Sevilla

59. All of the allegations set out above are reasserted and incorporated by reference.

60. Defendant Sevilla, while working as a Sergeant for MCSO and acting within the course and scope of his duties, intentionally struck Montez in the face with the end of his tactical rifle. Defendant Sevilla had no legal justification for deploying such force upon Montez. Defendant Sevilla struck Montez after Deputy Young had just kicked Montez in the back to the ground. Prior to the kick, Montez had not demonstrated any threatening behavior, he was not exhibiting any resistance, nor did he display any aggression towards any Deputies. It should be noted that all officers were equipped with tactical assault rifles pointed directly at Montez throughout the attack.

61. Defendant Sevilla's use of force while carrying out his duties was unreasonable.

62. As a direct and proximate cause of defendants' battery, Montez has suffered serious bodily injury, pain, suffering, anguish, emotional distress including hospital, and other medical expenses, all in an amount to be proved in the trial in this matter.

### FOURTH CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress

63. All of the allegations set out above are reasserted and incorporated by reference.

64. Defendant's Russell and Sevilla's above-described conduct was extreme, unreasonable and outrageous.

65. In engaging in the above-described conduct, defendants intentionally ignored or recklessly disregarded the foreseeable risk that Montez would suffer extreme emotional distress as a result of Defendants' conduct.

## FIFTH CLAIM FOR RELIEF
Defendant Russell Violated Plaintiff's Rights Under The Fourth Amendment And 42 U.S.C. §1983 To Be Free From The Unreasonable Use Of Force.

66. All of the allegations set out above are reasserted and incorporated by reference.

67. Defendants' Russel and Sevilla's actions were objectively unreasonable in light of the facts and circumstances confronting them. Montez presented absolutely no threat, he followed all commands and clearly indicated he intended to surrender. Additionally, Montez was not attempting to flee or exhibiting active resistance or aggression. Despite these facts, Defendant Sevilla hit Montez with the end of a rifle after he had been kicked to the ground. In turn, Defendant Russell released his K9 upon Montez in violation of MCSO policy. Defendant Russell then exasperates the situation by encouraging Mirko to further maul Montez even though it is clear that he is secured and unable to comply with further orders due to Mirko's bite.

68. As a direct and proximate result of the actions of Defendants Sevilla and Russell, Montez was : 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general \ damages, including attorney's fees, bail costs and other associated costs and expenses; all in an amount to be proven at trial.

69. The actions by said defendants were committed maliciously, oppressively and in reckless disregard of Montez's constitutional rights; sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

WHEREFORE, Plaintiff Daniel Charles Montez prays for judgment against the Defendants and each of them, jointly and severally, as follows:

a) For Medical expenses, past and future, in an amount to be proven at trial;

b) For damages for physical injuries physical and mental pain and suffering, and limitation of their normal activities, both past and future, in an amount to be proven at trial;

c) Punitive damages

d) For taxable court cost;

e) For such other and future relief as Court deems just and proper.

DATED this 31st day of January, 2019.

BLACKWELL, LYNCH & BERNARD, PLLC


By: /s/ Gillmore B. Bernard
JOCQUESE L. BLACKWELL
JEFFERY LYNCH
GILLMORE B. BERNARD
3101 N. Central Ave., Suite 820
Phoenix, AZ  85012
Attorneys for Plaintiff